DAVIS, Judge.
 

 *41
 
 On 30 April 2016, John Pinto, Jr. sought to purchase a vehicle from Valley Auto World ("VAW"), a car dealership in Fayetteville, North Carolina. Although the sales documents listed VAW as the seller of the vehicle, the actual owner was a separate entity, VW Credit Leasing, Ltd. ("VW Credit"). Later that evening, Pinto was killed in a collision while driving the vehicle. The occupants of the other car involved in the wreck were seriously injured and filed a negligence lawsuit against Pinto's estate along with a request for a declaratory judgment as to the liability insurance obligations of several insurers in connection with the accident. Following the filing of motions for summary judgment by the parties, the trial court entered an order determining that VAW's insurer provided primary liability insurance coverage to Pinto's estate and that excess coverage was provided by Pinto's personal insurer. Because we conclude that the absence of necessary parties in this lawsuit precluded the entry of a declaratory judgment, we vacate the trial court's order and remand for further proceedings.
 

 Factual and Procedural Background
 

 On 23 April 2016, Cheryl Copes returned a 2013 Volkswagen Beetle (the "Beetle") to
 
 *612
 
 VAW that she had previously leased from VW Credit.
 
 [1]
 
 At that time, Copes still owed $14,836 on her lease. Shortly after Copes completed her trade-in, the Beetle was placed on the VAW lot for resale. At that time, VAW had not yet paid off the remainder of the amount owed
 
 *42
 
 to VW Credit under Copes' lease. As a result, VW Credit remained the title owner of the vehicle.
 

 On the morning of Saturday, 30 April 2016, Pinto went to VAW for the purpose of trading in his 2004 Saturn and purchasing another vehicle. He ultimately decided to purchase the Beetle that had been traded in by Copes. Despite the fact that VAW did not actually own the vehicle, VAW sales representatives and Pinto nevertheless agreed upon a purchase price of $14,500 for the Beetle with a trade-in value of $2,000 for the Saturn. Because Pinto did not put any money down, a credit application was prepared and submitted by VAW to VW Credit for $12,500, the full amount necessary to fund the purchase.
 
 [2]
 

 At 12:05 p.m., while Pinto remained on the VAW premises, VAW received a fax from VW Credit containing VW Credit's approval of $11,990 in financing for Pinto's purchase of the Beetle. As a result, a $510 gap remained between the amount of financing approved by VW Credit and the total purchase price of the vehicle that had been agreed upon by Pinto and VAW. Despite this shortfall, Gary Carrington, the business manager of VAW, believed that he would ultimately be able to secure the full financing amount by resubmitting Pinto's credit application to VW Credit the following Monday. For this reason, Carrington proceeded to assist Pinto in completing the necessary paperwork memorializing the sale.
 

 Among the various documents executed by Pinto and VAW on 30 April 2016 was a Conditional Delivery Agreement ("CDA"). The CDA stated, in pertinent part, as follows:
 

 DEALER'S obligations to sell the SUBJECT VEHICLE to PURCHASER and execute and deliver the manufacturer's certificate of origin or certificate of title to SUBJECT VEHICLE are expressly conditioned on FINANCE SOURCE'S approval of PURCHASER'S application for credit as submitted AND dealer being paid in full by FINANCE SOURCE.
 

 Upon signing the documents provided to him by Carrington, Pinto drove the Beetle off the VAW lot that afternoon. Later that evening, Pinto was driving the Beetle when he was involved in a head-on collision (the "30 April Accident") with another vehicle being driven by Edward Smith.
 

 *43
 
 Smith's son, Archie, was a passenger in his vehicle. Pinto was killed in the collision, and both Edward Smith and Archie Smith were seriously injured.
 

 Unaware of Pinto's death, Carrington resubmitted his credit application to VW Credit on 2 May 2016. At 4:40 p.m. that day, VW Credit faxed VAW its approval for the full $12,500 that VAW had requested. The following day, VAW paid off the balance owed to VW Credit under Copes' lease. On 9 May 2016, VW Credit executed a reassignment of title to VAW. VAW, in turn, transferred title to Pinto on 23 May 2016.
 

 On 10 June 2017, the Smiths filed a lawsuit in Hoke County Superior Court that contained both negligence claims stemming from the 30 April Accident and a declaratory judgment claim seeking a determination as to "the nature and extent of insurance coverage provided to John Pinto, Jr. on April 30, 2016" as well as "the rights, status, and legal relations between the parties with respect to said insurance coverage." The complaint named as defendants Erie Insurance Company ("Erie"), the liability insurer for Pinto's Saturn; Universal Underwriters Insurance Company ("Universal"), the insurer that provided liability coverage for VAW; Pinto; and VAW.
 
 [3]
 

 *613
 
 On 22 August 2016, Erie filed a cross-claim seeking a declaratory judgment "as to the rights and obligations of ... the insurer Defendants."
 

 Universal filed a motion to dismiss the Smiths' claims for lack of standing on 16 August 2016. On 24 August 2016, the Smiths filed a motion for judgment on the pleadings. Motions for summary judgment were subsequently filed by the Smiths, Universal, and Erie.
 
 [4]
 

 A hearing was held on the parties' motions before the Honorable Richard T. Brown on 13 March 2017. On 13 April 2017, Judge Brown issued an order stating, in pertinent part, as follows:
 

 [B]ased upon the undisputed facts, ... [Universal] shall provide to the Defendant Estate of John Pinto, in connection with the automobile accident which is the subject of
 
 *44
 
 this lawsuit, primary insurance coverage in the amount of $500,000.00 and umbrella liability insurance coverage in the amount of $10,000,000.00 and ... [Erie]'s liability policy provides excess coverage for the Defendant Estate of John Pinto, in connection with the automobile accident which is the subject of this lawsuit, after [Universal]'s policy limits of $10,500,000.00 have been exhausted.
 

 The trial court's determination as to the respective coverage obligations of Universal and Erie was based on the court's ruling that
 
 N.C. Gen. Stat. § 20-75.1
 
 governed the sale of the Beetle to Pinto.
 
 [5]
 
 Universal filed a timely notice of appeal.
 

 Analysis
 

 "On an appeal from an order granting summary judgment, this Court reviews the trial court's decision
 
 de novo
 
 ."
 
 Mitchell, Brewer, Richardson, Adams, Burge & Boughman v. Brewer
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 433
 
 , 443 (2017) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 370 N.C. 693
 
 ,
 
 811 S.E.2d 161
 
 (2018). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."
 
 Premier, Inc. v. Peterson
 
 ,
 
 232 N.C. App. 601
 
 , 605,
 
 755 S.E.2d 56
 
 , 59 (2014) (citation and quotation marks omitted).
 

 It is well established that "[t]he moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. The evidence produced by the parties is viewed in the light most favorable to the non-moving party."
 
 Hardin v. KCS Int'l, Inc.
 
 ,
 
 199 N.C. App. 687
 
 , 695,
 
 682 S.E.2d 726
 
 , 733 (2009) (internal citations omitted). We have held that "[a]n issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense."
 
 In re Alessandrini
 
 ,
 
 239 N.C. App. 313
 
 , 315,
 
 769 S.E.2d 214
 
 , 216 (2015) (citation omitted).
 

 *45
 

 I. Universal's Interlocutory Appeal
 

 As an initial matter, we must determine whether Universal's appeal is properly before us.
 
 See
 

 Hous. Auth. of City of Wilmington v. Sparks Eng'g
 
 ,
 
 PLLC,
 

 212 N.C. App. 184
 
 , 187,
 
 711 S.E.2d 180
 
 , 182 (2011) ("[A]n appellate court has the power to inquire into jurisdiction in a case before it at any time, even
 
 sua sponte
 
 ." (citation and quotation marks omitted) ).
 

 "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined
 
 *614
 
 between them in the trial court."
 
 Duval
 

 v. OM Hospitality, LLC
 
 ,
 
 186 N.C. App. 390
 
 , 392,
 
 651 S.E.2d 261
 
 , 263 (2007) (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree."
 
 Heavner v. Heavner
 
 ,
 
 73 N.C. App. 331
 
 , 332,
 
 326 S.E.2d 78
 
 , 80,
 
 disc. review denied
 
 ,
 
 313 N.C. 601
 
 ,
 
 330 S.E.2d 610
 
 (1985) (citation omitted).
 

 "Generally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co.
 
 ,
 
 228 N.C. App. 314
 
 , 317,
 
 745 S.E.2d 69
 
 , 72 (2013) (citation and quotation marks omitted). The prohibition against interlocutory appeals "prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts."
 
 Russell v. State Farm Ins. Co.
 
 ,
 
 136 N.C. App. 798
 
 , 800,
 
 526 S.E.2d 494
 
 , 496 (2000) (citation and brackets omitted).
 

 However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under
 
 N.C. Gen. Stat. §§ 1-277
 
 (a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.
 

 N.C. Dep't of Transp. v. Page
 
 ,
 
 119 N.C. App. 730
 
 , 734,
 
 460 S.E.2d 332
 
 , 334 (1995) (internal citations omitted).
 

 The trial court's 13 April 2017 order does not contain a certification under Rule 54(b). Therefore, Universal's appeal is proper only if it can demonstrate a substantial right that would be lost absent an immediate appeal.
 
 See
 

 Embler v. Embler
 
 ,
 
 143 N.C. App. 162
 
 , 166,
 
 545 S.E.2d 259
 
 , 262 (2001) ("The burden is on the appellant to establish that a substantial
 
 *46
 
 right will be affected unless he is allowed immediate appeal from an interlocutory order." (citation omitted) ).
 

 As our Supreme Court has noted, "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied."
 
 Waters v. Qualified Personnel, Inc.
 
 ,
 
 294 N.C. 200
 
 , 208,
 
 240 S.E.2d 338
 
 , 343 (1978). As a result, the extent to which an interlocutory order affects a substantial right must be determined on a case-by-case basis.
 
 McCallum v. N.C. Coop. Extension Serv.
 
 ,
 
 142 N.C. App. 48
 
 , 50,
 
 542 S.E.2d 227
 
 , 231 (citation omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 353 N.C. 452
 
 ,
 
 548 S.E.2d 527
 
 (2001).
 

 Universal contends that the trial court's order implicated a substantial right by determining that its policy provided coverage for Pinto such that Universal would be required to defend his estate in the underlying tort action. We agree.
 

 It is well established that "[w]here there is a pending suit or claim, an interlocutory order concerning the issue of whether an insurer has a duty to defend in the underlying action affects a substantial right that might be lost absent an immediate appeal."
 
 Cinoman v. Univ. of N.C.
 
 ,
 
 234 N.C. App. 481
 
 , 483,
 
 764 S.E.2d 619
 
 , 621-22 (2014) (citation and quotation marks omitted);
 
 see also
 

 Lambe Realty Inv., Inc. v. Allstate Ins. Co.
 
 ,
 
 137 N.C. App. 1
 
 , 4,
 
 527 S.E.2d 328
 
 , 331 (2000) ("[T]he duty to defend involves a substantial right to both the insured and the insurer." (citation omitted) ).
 

 In the present case, Pinto was not a named insured of Universal. Consequently, Universal would not ordinarily be under any obligation to defend him or his estate in a civil action. However, by ruling that Universal's policy covered Pinto at the time of the 30 April Accident, the court's order implicated Universal's duty to defend Pinto's estate in this lawsuit and thus affected a substantial right. Therefore, Universal's appeal is properly before us.
 

 II. Standing
 

 We must next address whether the Smiths or Erie possess standing to seek a declaration as to the liability insurance coverage obligations owed to Pinto's estate in connection
 
 *615
 
 with the 30 April Accident. The Smiths argue that they have standing as persons whose "rights, status or other legal relations" are affected by the operation of
 
 N.C. Gen. Stat. § 20-75.1
 
 . Universal contends, however, that the Smiths lack standing because "[i]t is the effect of the conditional delivery statute on [Pinto] and VAW which is at issue, not the Smiths." We agree that the Smiths do not possess standing.
 
 *47
 
 North Carolina's Uniform Declaratory Judgment Act provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed."
 
 N.C. Gen. Stat. § 1-253
 
 (2017). "Before a declaratory judgment can be had, however, there must exist a real controversy of a justiciable nature."
 
 DeMent v. Nationwide Mut. Ins. Co.
 
 ,
 
 142 N.C. App. 598
 
 , 601,
 
 544 S.E.2d 797
 
 , 799 (2001) (citation and quotation marks omitted).
 
 N.C. Gen. Stat. § 1-254
 
 sets out the following criteria with regard to when persons are entitled to declaratory relief:
 

 Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.
 

 N.C. Gen. Stat. § 1-254
 
 (2017).
 

 This Court has stated that "[a] declaratory judgment may be used to determine the construction and validity of a statute, but the plaintiff must be
 
 directly and adversely
 
 affected by the statute."
 
 Wake Cares, Inc. v. Wake Cty. Bd. of Educ.
 
 ,
 
 190 N.C. App. 1
 
 , 11,
 
 660 S.E.2d 217
 
 , 231 (2008),
 
 aff'd
 
 ,
 
 363 N.C. 165
 
 ,
 
 675 S.E.2d 345
 
 (2009) (citation and quotation marks omitted) (emphasis added). With respect to contractual rights, we have held that "[w]hen a person is a third party to a contract, standing to seek a declaration as to the extent of coverage under an insurance policy requires that the party seeking relief have an enforceable contractual right under the insurance agreement."
 
 Whittaker v. Furniture Factory Outlet Shops
 
 ,
 
 145 N.C. App. 169
 
 , 174,
 
 550 S.E.2d 822
 
 , 825 (2001) (citation and quotation marks omitted).
 

 In
 
 DeMent
 
 , the plaintiff sustained injuries resulting from a car accident where the driver of the other vehicle failed to stop at a stop sign.
 
 DeMent
 
 , 142 N.C. App. at 599,
 
 544 S.E.2d at 798
 
 . After the tortfeasor's insurer refused to pay for the plaintiff's medical expenses, the plaintiff sought a declaratory judgment construing the insurance policy at issue. We held that the plaintiff lacked standing, concluding that "[b]ecause the benefit running to [the] plaintiff by reason of the provision is merely incidental, he is without standing as a third-party beneficiary to seek enforcement of the covenant or a declaratory judgment as to its terms."
 
 Id.
 
 at 605,
 
 544 S.E.2d at 801
 
 .
 

 *48
 

 Whittaker
 
 involved a petitioner who loaned his motorcycle to Furniture Factory Outlet Shops ("Furniture Factory") to be used as a display in order to attract business to the store.
 
 Id.
 
 at 171,
 
 550 S.E.2d at 823
 
 . The motorcycle was subsequently stolen from the store's premises. Following the theft, the petitioner filed a claim for the loss of his motorcycle with Furniture Factory's insurer, and the insurer denied the claim. The petitioner then sought a declaratory judgment that his loss was covered under the store's insurance policy.
 

 Id.
 

 This Court held that the petitioner lacked standing to seek a declaratory judgment, stating as follows:
 

 As in
 
 DeMent
 
 , the petitioner in this case is an incidental beneficiary to the insurance policy, and does not have a contractual right under
 
 N.C. Gen. Stat. § 1-253
 
 , and therefore, does not have standing. ... Without a judgment against Furniture Factory, petitioner does not have an enforceable contractual right under the insurance policy. As a result, petitioner does not have standing to bring this action directly against respondent.
 

 Id.
 

 at 175
 
 ,
 
 550 S.E.2d at 825-26
 
 (quotation marks omitted).
 

 In the present case, the Smiths were not named insureds under any of the insurance policies that potentially provided liability coverage
 
 *616
 
 to Pinto for his operation of the Beetle at the time of the 30 April Accident.
 
 [6]
 
 Thus, they lack standing to seek a declaration as to the extent to which coverage exists under those policies.
 

 Nor do the Smiths possess standing to seek a determination as to whether
 
 N.C. Gen. Stat. § 20-75.1
 
 applies to this case. As noted above,
 
 N.C. Gen. Stat. § 20-75.1
 
 sets out the circumstances under which a conditionally delivered vehicle remains covered by a dealership's liability insurance policy in cases where the purchaser has not yet obtained financing for the purchase of the vehicle. The statute does not address the rights of third-party accident victims. Consequently, the Smiths are not "directly and adversely affected" by
 
 N.C. Gen. Stat. § 20-75.1
 
 as would be required in order for them to possess standing to seek a declaration as to the statute's applicability to these facts.
 
 Wake Cares
 
 ,
 
 190 N.C. App. at 11
 
 ,
 
 660 S.E.2d at 231
 
 . For these reasons, we conclude that the Smiths lack standing to seek a declaratory judgment in this action.
 

 *49
 
 Our determination that the Smiths do not possess standing, however, does not end our standing analysis. Erie has also asserted a claim seeking a declaratory judgment as to its coverage obligations with regard to the 30 April Accident.
 

 N.C. Gen. Stat. § 1-257
 
 states, in pertinent part, as follows:
 

 [A] controversy between insurance companies, arising either by direct action or by joinder or intervention, with respect to which of two or more of the insurers is liable under its particular policy and the insurers' respective liabilities and obligations, constitutes a justiciable issue and the court should, upon petition by one or more of the parties to the action, render a declaratory judgment as to the liabilities and obligations of the insurers.
 

 N.C. Gen. Stat. § 1-257
 
 (2017).
 

 Here, Erie is seeking a declaratory judgment as to its obligations in connection with the underlying tort action brought by the Smiths.
 
 N.C. Gen. Stat. § 1-257
 
 expressly provides that such a controversy between insurance carriers "constitutes a justiciable issue" warranting the issuance of a declaratory judgment. Therefore, we are satisfied that Erie possesses standing to seek a declaratory judgment in order to determine the amount of coverage, if any, provided by its policy with regard to the 30 April Accident.
 

 III. Joinder of Necessary Parties
 

 Although we have determined that Erie possesses standing to seek a declaratory judgment in this action, we nevertheless conclude that the trial court erred in ruling on Erie's claim for declaratory relief because of the absence of necessary parties to the litigation. North Carolina Rule of Civil Procedure 19(b) provides as follows:
 

 The court may determine any claim before it when it can do so without prejudice to the rights of any party or to the rights of others not before the court; but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action.
 

 N.C. R. Civ. P. 19(b).
 

 This Court has held that "[a] necessary party is one whose presence is required for a complete determination of the claim, and is one whose
 
 *50
 
 interest is such that no decree can be rendered without affecting the party. In other words, a necessary party is one whose interest will be directly affected by the outcome of the litigation."
 
 Begley v. Emp't Sec. Comm.
 
 ,
 
 50 N.C. App. 432
 
 , 438,
 
 274 S.E.2d 370
 
 , 375 (1981) (internal citations and quotation marks omitted). "When there is an absence of necessary parties, the trial court should correct the defect
 
 ex mero motu
 
 upon failure of a competent person to make a proper motion."
 
 Rice v. Randolph
 
 ,
 
 96 N.C. App. 112
 
 , 113,
 
 384 S.E.2d 295
 
 , 297 (1989) (citation omitted). Furthermore, "[a] judgment which is determinative of a claim arising in an action in which necessary parties have not been joined is null and void."
 

 Id.
 

 *617
 
 Our appellate courts have previously applied this principle in the context of declaratory judgment actions.
 
 See, e.g.,
 

 N.C. Monroe Constr. Co. v. Guilford Cty. Bd. of Educ.
 
 ,
 
 278 N.C. 633
 
 , 640,
 
 180 S.E.2d 818
 
 , 822 (1971) (vacating declaratory judgment that invalidated award of construction contract because party awarded contract was "a necessary party in a proceeding to declare its contract with the defendant invalid and the court below could not properly determine the validity of that contract without making Barker-Cochran a party to the proceeding");
 
 Rice
 
 ,
 
 96 N.C. App. at 114
 
 ,
 
 384 S.E.2d at 297
 
 ("We believe that a dispute as to the extinguishment of a subdivision easement ... cannot be resolved without the joinder of the grantor, or his heirs, who retain fee title to the soil[.]" (internal citations omitted) ).
 

 In the present case, it is clear that at all relevant times both VAW and VW Credit were operating as if VAW was the owner of the Beetle. But it is undisputed that the vehicle was instead owned by VW Credit. Thus, with regard to Pinto's attempt to purchase the Beetle on 30 April 2016, VAW was asking VW Credit to provide financing for the sale of a vehicle that VW Credit actually owned and as to which VAW appears to have had no legally recognized interest. Nevertheless, for reasons that are not apparent from the record, neither VW Credit nor any of its insurers were ever made parties to this lawsuit. Given VW Credit's status as the owner of the Beetle at the time of the 30 April Accident, no determination as to the insurance coverage available to Pinto's estate can be made without the joinder as parties to this action of VW Credit itself and/or any of its insurers who provided liability coverage to it that may apply to the accident.
 

 Therefore, we must vacate the trial court's order and remand this case for joinder of these necessary parties.
 
 See
 

 In re Foreclosure of a Lien by Hunter's Creek Townhouse Homeowners Assoc., Inc.
 
 ,
 
 200 N.C. App. 316
 
 , 319,
 
 683 S.E.2d 450
 
 , 453 (2009) (vacating and remanding trial
 
 *51
 
 court's order in declaratory judgment action where court "should have intervened
 
 ex mero motu
 
 " to ensure joinder of a necessary party).
 

 Conclusion
 

 For the reasons stated above, we vacate the trial court's 13 April 2017 order and remand for further proceedings not inconsistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 The record contains testimony from a VAW employee stating that a "dealer agreement" existed between VAW and VW Credit on 30 April 2016. However, the record does not further explain the precise nature of their relationship.
 

 [2]
 

 While the record is unclear on this issue, it appears that both VAW and VW Credit were under the mistaken impression that VAW owned the Beetle.
 

 [3]
 

 Two other insurers, USAA Casualty Insurance Company ("USAA") and Zurich American Insurance Company ("Zurich"), were also originally named as defendants but were later dismissed from the lawsuit by the Smiths. It appears from the record that Pinto had unsuccessfully attempted to contact USAA on 30 April 2016 to inquire about the possibility of obtaining insurance for the Beetle. The record further indicates that Zurich had previously issued an insurance policy to VAW. In addition, although the complaint named Pinto as a defendant, Pinto's estate was later substituted as a party in his place. Finally, the Smiths also later dismissed VAW as a party.
 

 [4]
 

 The motions filed by the parties related solely to the declaratory judgment claims asserted by the Smiths and Erie.
 

 [5]
 

 N.C. Gen. Stat. § 20-75.1
 
 sets out the circumstances under which a conditionally delivered vehicle remains covered under the car dealership's liability insurance policy in cases where the sale of the vehicle by the dealer is contingent upon the purchaser obtaining financing for the purchase.
 

 [6]
 

 Nor do the Smiths make any argument that they were third-party beneficiaries under these policies.